**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

YOR-WIC CONSTRUCTION CO., INC.          CIVIL ACTION NO. 17-0224

VERSUS                                   JUDGE S. MAURICE HICKS, JR.

ENGINEERING DESIGN                       MAGISTRATE JUDGE HAYES
TECHNOLOGIES, INC., ET AL.

**MEMORANDUM RULING**

Before the Court are multiple pending motions filed by the parties pursuant to Federal Rule of Civil Procedure 56: (1) Plaintiff Yor-Wic Construction Co., Inc.'s ("Yor-Wic") Motion for Partial Summary Judgment (Record Document 100); (2) Defendant and Third-Party Plaintiff Engineering Design Technologies, Inc.'s ("EDT") Motion for Summary Judgment (Record Document 97); (3) Third-Party Defendant Fidelity and Deposit Company of Maryland's ("Fidelity") Motion for Summary Judgment (Record Document 101); and (4) Third-Party Defendant United Fire and Casualty Company's ("United Fire") Motion for Summary Judgment (Record Document 98). For the reasons set forth below, United Fire's Motion for Summary Judgment is **GRANTED** and EDT's Motion for Summary Judgment[1] is **GRANTED IN PART AND DENIED IN PART**. Additionally, Yor-Wic's Motion for Partial Summary Judgment and Fidelity's Motion for Summary Judgment are **DENIED**.

## I.     BACKGROUND

This case concerns the rights and obligations of multiple parties under a subcontract executed by EDT, as general contractor, and Yor-Wic, as subcontractor. See

---

[1] The Court notes that EDT's motion also seeks partial summary judgment against Fidelity. See Record Document 97 at 1.

Record Document 46 at 10. In addition, Fidelity, as surety, issued a Subcontract Performance Bond (the "Bond") on behalf of Yor-Wic, as principal, and EDT, as obligee. See Record Document 97-1 at 6–7; Record Document 101-1 at 6. On January 3, 2017, Yor-Wic filed a "Petition for Declaratory Judgment with Reservation of other Actions and Defenses" against EDT in the 26th Judicial District Court, Bossier Parish, Louisiana. See Record Document 1-1 at 1. Yor-Wic initiated this suit after EDT defaulted Yor-Wic for non-performance. According to the original Petition, EDT entered into a contract (the "Prime Contract") with the Naval Facilities Engineering Command, Southeast ("NAVFAC") for construction of drainage improvements at Barksdale Air Force Base. See id. EDT, in turn, entered into a March 30, 2016 agreement (the "Subcontract") with Yor-Wic to perform work under the Prime Contract. See id. at 2.

The Prime Contract specified that EDT should not enter into any contract with a subcontractor who did not comply with the requisite Experience Modification Rate ("EMR"). See id.; Record Document 10-5 at 75. Yor-Wic alleged that, prior to the execution of the Subcontract, it advised EDT that Yor-Wic's EMR exceeded the maximum rate permitted by the Prime Contract. See Record Document 1-1 at 3. Thereafter, EDT submitted Yor-Wic's EMR to NAVFAC, but NAVFAC rejected Yor-Wic as a subcontractor. See id. at 10. Following the initial rejection, "EDT submitted a written request for additional consideration to the [c]ontracting [o]fficer due to Yor-Wic's failure to meet the specified acceptable EMR range, but NAVFAC refused to approve Yor-Wic as a subcontractor to EDT for the [p]roject." Id.; see, e.g., Record Document 101-4 at 140.

In its original Petition, Yor-Wic contended that the Subcontract, by incorporating the EMR requirement, included a suspensive condition that NAVFAC must approve Yor-

Wic as a subcontractor for the Project. See Record Document 1-1 at 10. Because of the failure of the suspensive condition, Yor-Wic sought a judgment declaring the Subcontract invalid, void, null, unenforceable, extinguished, and/or without cause or consent. See id. at 4. In addition, Yor-Wic sought the same declaration as to the payment and performance bonds that secured performance of the Subcontract. See id. On February 1, 2017, EDT removed the case to federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. On the same date, Yor-Wic filed a Motion for Leave to File First Amending and Supplemental Petition and Incorporated Memorandum, which the Court granted. See Record Document 9-1 at 26. In Yor-Wic's Amended Petition, it added several more claims including equitable estoppel, impossibility of performance based on a fortuitous event, subjective novation, nullity based on an alleged False Claims Act violation, and lack of consent due to error as to person. See id. at 34. EDT filed an original and amended answer with affirmative defenses and counterclaims against Yor-Wic based on Yor-Wic's alleged termination for default due to Yor-Wic's unilateral abandonment of the work. See Record Documents 13 and 32; Record Document 30-1 at 7.

On July 11, 2018, this Court issued a Memorandum Ruling granting in part and denying in part a Partial Motion for Judgment on the Pleadings filed by EDT, which dismissed all of Yor-Wic's claims except for its subjective novation claim. See Record Document 73 at 16. On March 2, 2018, EDT filed a Second Amended Answer and Counterclaim against Yor-Wic and a Third-Party Demand (the "Third-Party Complaint") against Fidelity and United Fire, Yor-Wic's general liability insurer. See Record Document 46; Record Document 59-1 at 2. In the Third-Party Complaint, EDT asserted several claims including, inter alia, that Yor-Wic and Fidelity are jointly, severally, and solidarily

liable for EDT's damages under its claims for "Contract Default" and "Subcontract Default." <u>See</u> Record Document 46 at 19–20. In addition, EDT asserted a claim for detrimental reliance against Yor-Wic, Fidelity, and United Fire based on EDT's reliance on alleged representations made by Yor-Wic concerning Yor-Wic's EMR and ability to complete performance of the Subcontract. <u>See id.</u> at 20–21.

On March 28, 2019, the Court granted a Partial Motion to Dismiss filed by Fidelity, which dismissed EDT's claims for detrimental reliance and subcontract breach asserted against it in the Third-Party Complaint. <u>See</u> Record Document 83 at 1 n.1, 8. Additionally, all parties in this matter have since filed numerous additional motions, several of which are dispositive, that are now pending before the Court. <u>See</u> Record Documents 97, 98, 100, and 101.

## II.   LAW AND ANALYSIS

### A.   Summary Judgment Standard

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." <u>Quality Infusion Care, Inc. v. Health Care Serv. Corp.</u>, 628 F.3d 725, 728 (5th Cir. 2010). A genuine dispute of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. <u>See</u> <u>Geoscan, Inc. of Texas v. Geotrace Techs., Inc.</u>, 226 F.3d 387, 390 (5th Cir. 2000). During this stage, courts must look to the substantive law underlying the lawsuit in order to identify which facts are "material." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof [at trial]." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986)). If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine [dispute] for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir. 2005).

In reviewing a motion for summary judgment, the court is to view "the facts and inferences to be drawn therefrom in the light most favorable to the non-moving party." Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp., Inc., 292 F.3d 471, 478 (5th Cir. 2002); Harris v. Serpas, 745 F.3d 767, 771 (5th Cir. 2014). The court should not, however, in the absence of any proof, presume that the nonmoving party could or would prove the necessary facts. See Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

**B.   Subjective Novation Claim**

The Court first addresses the issue of whether the parties' conduct was sufficient to constitute a subjective novation such that a new obligor was substituted for Yor-Wic as

EDT's primary subcontractor.[2] "Novation is the extinguishment of an existing obligation by the substitution of a new one." La. Civ. Code art. 1879. The intention to extinguish the original obligation must be clear and unequivocal; novation may not be presumed. Id. art. 1880. However, the intent to novate need not be expressly declared in writing. See, e.g., Barham v. St. Mary Land & Expl. Co., 48,603 (La. App. 2d Cir. 11/20/13), 129 So. 3d 705, 709, writ denied, 13-2943 (La. 2/21/14), 134 So. 3d 586. "The intent of the parties is the paramount factor in proving a novation." Id. (citing Scott v. Bank of Coushatta, 512 So. 2d 356, 360 (La. 1987)). Louisiana law provides for two types of novation, objective and subjective novation. See Ciolino v. First Guar. Bank, 12-2079 (La. App. 1st Cir. 10/30/13), 133 So. 3d 686, 698 (Theriot, J., dissenting). An objective novation occurs when "the parties agree that a new performance or cause is substituted for the previous one." Id.; see La. Civ. Code art. 1881. A subjective novation occurs when "a new obligor is substituted for a prior obligor who is discharged by the obligee." La. Civ. Code art. 1882. This can be accomplished without the consent of the prior obligor, unless the prior obligor still had an interest in performing the obligation. See id. Further, an essential requisite to confect a subjective novation is the express discharge of the debtor from his obligation. See Baron v. Guidry, 134 So. 410, 411 (La. App. 1st Cir. 1931).

In the case at hand, the Court finds that a genuine dispute of material fact exists as to whether a subjective novation occurred such that a new obligor replaced Yor-Wic as the qualified subcontract to perform work on the Project. First, the record evidence contains several representations made by EDT that suggest it intended for Yor-Wic to be

---

[2] The Court notes that while this issue is the subject of one of Yor-Wic's claims in its Amended Petition, only EDT and Fidelity seek summary judgment as to this issue.

replaced by a new subcontractor, Daniel Construction Company, Inc. ("Daniel Construction"). The most telling example of such conduct pertains to EDT's submission of an "Accident Prevention Plan" to NAVFAC, subsequent to NAVFAC's rejection of Yor-Wic as subcontractor, which stated that "[Daniel Construction] will be subcontracted by EDT to perform the majority of the municipal and public works scope of work for this project." Record Document 101-2 at 104. This representation is made even more indicative of EDT's intent when compared with a previous Accident Prevention Plan it submitted before Yor-Wic's disqualification that used identical language in referring to Yor-Wic as EDT's subcontractor. See id. at 101. Further, while EDT asserts that it understood that Yor-Wic, in order to still perform its obligation to EDT, "submitted Daniel Construction to it as a sub-subcontractor that could perform the . . . Work on the Project," Record Document 103 at 26, the communications between EDT and NAVFAC suggest otherwise. Rather, these communications show that NAVFAC gave a clear instruction to EDT that "Yor-Wic shall not work on th[e] project." Record Document 101-2 at 64.[3]

However, notwithstanding these communications, EDT points to additional correspondence in the record concerning the Project between it, Yor-Wic, and Daniel Construction that continued after NAVFAC had already rejected Yor-Wic as subcontractor as evidence that EDT understood that Yor-Wic would still fulfill its obligations under the

---

[3] EDT also appears to dispute a related issue regarding whether the EMR requirement only applied to the extent a subcontractor performed physical work on the Project. See Record Document 46 at 12. However, EDT's assertion conflicts with the record evidence regarding this issue. See Record Document 100-3 at 137; see also Record Document 101-4 at 140 (showing testimony that the EMR requirement applied to any subcontractor, "regardless of the type of work").

Subcontract. See Record Document 97-1 at 23; Record Document 103 at 26.[4] While the Court is perplexed by EDT's contention that it intended for Yor-Wic to perform the work for the Project through Daniel Construction despite the wholly contrary representations it made to (and received from) NAVFAC,[5] the Court nevertheless finds that there is insufficient and contradictory evidence as to whether the parties intended a novation to occur such that summary judgment is not appropriate for either party at this stage. Accordingly, EDT and Fidelity's Motions for Summary Judgment as to Yor-Wic's subjective novation claim are **DENIED**.

### C.    Enforceability of the Subcontract

In addition to the subjective novation issue, the parties assert various arguments relating to the enforceability of the Subcontract. As an initial starting point, the Court addresses an argument by Fidelity that Yor-Wic's disqualifying EMR rating renders the Subcontract unlawful and, consequently, extinguishes Fidelity's obligations under the Bond. See Record Document 101-1 at 21. Specifically, Fidelity contends that the Subcontract is absolutely null under Louisiana Civil Code Article 2030 and thus

---

[4] For example, EDT claims that after Yor-Wic was rejected by NAVFAC, EDT understood that Yor-Wic submitted Daniel Construction to it as a "sub-subcontractor" to perform the on-site work and that Ryan Wicker, an alleged officer of Yor-Wic, was the primary contact who facilitated Daniel Construction's involvement for the Project. See Record Document 97-1 at 22–23. Similar to the majority of issues in this case, however, this claim is contradicted by record evidence submitted by Yor-Wic that suggest that Mr. Wicker was no longer employed by Yor-Wic when said communications took place. See Record Document 106-1 at 11 (citing Record Document 106-3 at 19–21); see also Record Document 106-5 at 9–11.

[5] The Court also notes that given the extensive contradictory evidence regarding the parties' intent and conduct in this matter, many of the claims in dispute also involve questions of witness credibility and thus are not appropriate to a summary judgment determination. Further, issues pertaining to the parties' good faith (or absence thereof) may also affect such claims, as well as any party's potential recovery, should the factfinder find said issues necessary to address at trial. See, e.g., La. Civ. Code art. 2003.

unenforceable. See id. at 22–23. This argument is meritless for several reasons. First, nowhere in the federal regulation upon which Fidelity relies is there a reference to the EMR requirement. See 48 C.F.R. § 52.236–13. Rather, the provision broadly requires, inter alia, that the contractor shall "[e]nsure that any additional measures the Contracting Officer determines to be reasonably necessary for the purposes are taken." Id. Although NAVFAC's Task Order provided the EMR requirement as one of these measures, Fidelity ignores the provision that also allows the Contracting Officer to waive said requirement after additional consideration. See Record Document 10-5 at 75. Thus, contrary to Fidelity's assertion, Yor-Wic's nonconforming EMR rating did not automatically render the Subcontract void ab initio given that NAVFAC had the authority to cure any noncompliance. Moreover, Fidelity's position is not supported by the limited case law addressing absolute nullities under Article 2030. See, e.g., United States ex rel. McLain v. Fluor Enters., Inc., 681 Fed. App'x 355, 361–62 (5th Cir. 2017) (rejecting argument that subcontracts were absolutely null as object of the subcontracts was neither illicit nor immoral and thus did not "violate[] a rule of public order").[6]

The Court next addresses the parties' arguments regarding whether the rejection of Yor-Wic as subcontractor for not complying with the EMR requirement operated as a failure of a suspensive condition, thereby rendering the Subcontract between Yor-Wic and EDT unenforceable. Under Louisiana law, "[a] conditional obligation is one dependent on an uncertain event. If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive." La. Civ. Code art. 1767; see also Saul Litvinoff, Law

---

[6] Because this was merely an argument raised by Fidelity in its motion rather than a claim or defense asserted in a pleading, the Court simply denies the argument outright.

of Obligations, in 5 Louisiana Civil Law Treatise § 5.3 (2d ed. 2019) (noting that the uncertain event "may also be an act of a third person, such as giving approval or granting credit"). "Conditions may be either expressed in a stipulation or implied by the law, the nature of the contract, or the intent of the parties." La. Civ. Code art. 1778. "A condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment." Id. art. 1772.

Here, the Court finds that NAVFAC's approval of Yor-Wic as subcontractor for the Project acted as a suspensive condition upon which the Subcontract depended in order to be enforced against Yor-Wic. Regardless of whether said approval is properly classified as an express condition in the Subcontract, it is certainly implied from the nature of the contract and the presumed intent of the parties. The Subcontract clearly incorporates the requirements contained in the Prime Contract, see Record Document 13-1 at 2, including that no subcontractor on the Project have an EMR rating greater than 1.10. Further, by signing the Subcontract, Yor-Wic represented to EDT that it had independently investigated and ascertained the "obligations of [the] Subcontract and Contract Documents" and that it was "fully qualified to perform [the] Subcontract." Id. at 7.

Notwithstanding Yor-Wic's representations, Yor-Wic's EMR rating of 1.14 did not meet the Prime Contract's EMR requirement, which ultimately resulted in NAVFAC rejecting Yor-Wic as subcontractor for the Project, i.e., the nonfulfillment of the suspensive condition to the Subcontract. See Record Document 106-1 at 8–9. However, while this result would ordinarily render the Subcontract unenforceable, the Court finds that Yor-Wic's conduct was a significant factor in producing this outcome. As the Court noted in a prior ruling in this matter, Yor-Wic knew or should have known that its EMR

exceeded the maximum allowed by the Prime Contract and thus the risk that NAVFAC would refuse to grant a waiver as a result. See Record Document 73 at 14. Because the Court determines that such conduct constitutes "fault" under Article 1772, the suspensive condition that NAVFAC approve Yor-Wic as subcontractor is regarded as fulfilled for purposes of the parties' claims in this matter. See Farnsworth/Samuel Ltd. v. Cervini, 492 So. 2d 1245, 1246–47 (La. App. 4th Cir. 1986), writ denied, 497 So. 2d 316 (La. 1986).[7] Accordingly, as to Yor-Wic's suspensive condition claim, EDT's Motion for Summary Judgment is **GRANTED** and Fidelity's Motion for Summary Judgment is **DENIED**. Therefore, Yor-Wic's suspensive condition claim is hereby **DISMISSED WITH PREJUDICE**.

The Court also addresses Yor-Wic's contention in its Amended Petition that the Subcontract is unenforceable because it was allegedly modified by EDT subsequent to Yor-Wic's execution, which resulted in a counteroffer that was not accepted by Yor-Wic and thus lacked its consent. See Record Document 9-1 at 33–34; see also Record Document 106 at 2. Alternatively, Yor-Wic argues that the Subcontract is sufficiently ambiguous as to its scope of performance to render it void. See Record Document 106 at 2. Louisiana law provides that "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract

---

[7] The Court clarifies that as a result of this finding, Yor-Wic cannot further argue that NAVFAC's failure to approve it as subcontractor for the Project renders the Subcontract unenforceable. This finding, however, remains subject to the resolution of the other issues in dispute at trial. See supra p. 8 and note 5; see infra p. 13.

as a whole." Id. art. 2050. Additionally, separate documents may be incorporated into a contract by attachment or reference thereto. See, e.g., Russellville Steel Co., Inc. v. A & R Excavating, Inc., 624 So. 2d 11, 13 (La. App. 5th Cir. 1993).

First, it is clear from the express language of the Subcontract that EDT could modify Yor-Wic's scope of work without its consent. Section 9.1 of the Subcontract provides that EDT may "at any time, unilaterally or by agreement with Subcontractor . . . make changes in the Subcontractor's Work." Record Document 97-1 at 100 (emphasis added). Furthermore, while the Subcontract affords Yor-Wic the right to submit a request or claim for a price adjustment in the event it disputes any changes by EDT, it must still "perform the [] Work as changed without delay." Id. at 100–01. Thus, any modification by EDT pertaining to Yor-Wic's scope of work did not result in a counteroffer that required Yor-Wic's consent in order to take effect. Accordingly, Yor-Wic's claim in the Amended Petition that the modified Subcontract resulted in a counteroffer is hereby **DISMISSED WITH PREJUDICE**.[8]

Likewise, the presence of an ambiguity in the Subcontract or attachments does not necessarily void the Subcontract as a whole. While the Court finds that some ambiguity exists regarding Yor-Wic's exact scope of work as intended by EDT, specifically whether

---

[8] The Court notes that EDT did not move for summary judgment as to this issue but instead only addresses this argument in its reply brief. While Rule 56(f) normally requires that notice and a reasonable time to respond be provided before granting summary judgment for a nonmovant, the Court finds that Yor-Wic had sufficient notice and opportunity to respond as it raised the issue in response to EDT's motion and failed to further address it in its own Motion for Partial Summary Judgment. See, e.g., Jensen v. Snellings, 841 F.2d 600, 618 (5th Cir. 1988) (finding summary judgment for nonmovant appropriate where there had been a full and fair opportunity to develop the record and issue was argued in parties' briefs); see also Record Document 73 at 8 n.4.

it included all design and Cured-in-Place-Pipe ("CIPP") work,[9] such ambiguity does not affect the validity of the Subcontract due to EDT's right to modify Yor-Wic's obligation without its consent. See supra. Rather, this issue may have bearing on the amount of any damages owed by Yor-Wic, the relevancy of which is subject to the resolution of the other issues in dispute at trial. Therefore, the Court rejects Yor-Wic's argument that any ambiguity regarding its scope of performance under the Subcontract renders its obligations thereunder void.[10]

### D.   EDT and Fidelity's Claims Under the Bond

Also at issue are claims between EDT and Fidelity regarding Fidelity's liability *vel non* to EDT under the Bond for Yor-Wic's default. The Court first addresses Fidelity's defense that EDT materially altered the bonded Subcontract and thereby extinguished Fidelity's obligations under the Bond. See Record Document 101-1 at 26. Louisiana law provides that "[t]he modification or amendment of the principal obligation . . . by the creditor, in any material manner and without the consent of the surety," can extinguish all or part of a suretyship. La. Civ. Code art. 3062 (emphasis added). "A commercial suretyship is extinguished to the extent the surety is prejudiced by the action of the creditor, unless . . . the surety should have contemplated that the creditor might take such action in the ordinary course of performance of the obligation." Id.

---

[9] For example, both EDT and Yor-Wic cite to conflicting testimony in the record in support of their arguments as to whether a document titled "Exhibit H," if part of the Subcontract, rendered the Subcontract ambiguous by allegedly modifying Yor-Wic's scope of work to include design and CIPP, the latter of which is described as a complicated process for repairing damaged pipes, see Record Document 105 at 6. See Record Document 106-3 at 22–24; Record Document 115 at 11, 30–31.

[10] See supra note 6.

Here, the Court need not address this issue in depth because it is clear from the language of the bonded Subcontract that Fidelity consented in advance to the actions it complains of. As previously noted, the Subcontract provides that EDT may "at any time . . . <u>without notice to the sureties</u>, make changes in the Subcontractor's Work." Record Document 97-1 at 100 (emphasis added). Therefore, because the Bond expressly incorporates the Subcontract, <u>see</u> Record Document 101-2 at 1, Fidelity waived its right to contest any alterations to Yor-Wic's scope of work. Accordingly, as to Fidelity's material alteration claim, EDT's Motion for Summary Judgment is **GRANTED** and Fidelity's Motion for Summary Judgment is **DENIED**. Thus, Fidelity's material alteration claim is hereby **DISMISSED WITH PREJUDICE**.

The Court next addresses Fidelity's contention that EDT's alleged failure to timely notify it of Yor-Wic's default discharged Fidelity's liability under the Bond. <u>See</u> Record Document 101-1 at 24. At the outset, the Court notes that only a small number of cases in Louisiana have addressed the specific issue of an obligee's late notice and its effect on the surety's liability, the majority of which do not address the issue in depth. The most relevant and factually similar of these cases is <u>Resolution Trust Corp. v. Gaudet</u>, 907 F. Supp. 212 (E.D. La. 1995), which both EDT and Fidelity cite in their briefs. <u>See</u> Record Document 103 at 18; Record Document 105 at 10. In <u>Gaudet</u>, a financial institution bond surety attempted to avoid liability based on the claimant's late notice of its loss. <u>See</u> <u>Gaudet</u>, 907 F. Supp. at 217. The court denied the surety's request for summary judgment, reasoning that since the financial institution bond did not make timely notice an explicit condition precedent to coverage, the surety had to demonstrate prejudice resulting from the late notice in order to defeat the bond claim. <u>See id.</u> at 217–18.

In this case, neither EDT nor Fidelity dispute that the Bond does not make timely notice a condition precedent to coverage and that, consequently, Fidelity must demonstrate that it suffered actual prejudice as a result of the alleged late notice. EDT argues that it provided Fidelity with timely notice of Yor-Wic's default after it received a letter from Yor-Wic's counsel in January 2017 informing it that Yor-Wic had no intention of performing the Subcontract. <u>See</u> Record Document 103 at 20–21. Fidelity responds that EDT's duty to call on the Bond instead arose in July 2016 when EDT learned that NAVFAC would not allow Yor-Wic to work on the Project. <u>See</u> Record Document 116 at 3. Additionally, Fidelity asserts that statements by EDT contained in the record show that EDT's delay in obtaining a qualified subcontractor for the Project resulted in, *inter alia*, approximately $600,000 in liquidated damages. <u>See</u> Record Document 101-1 at 25. However, upon review of the record, the Court finds that a genuine issue of material fact exists as to whether the delay prejudiced Fidelity's position and the extent to which Fidelity could have remedied said delay had it been notified earlier, such that neither party has shown it is entitled to summary judgment. Therefore, because the Court believes that this issue is better decided by the factfinder at trial, EDT and Fidelity's Motions for Summary Judgment as to Fidelity's defense of late notice are **DENIED**.

### E.    Claims Against United Fire and Casualty Company

Lastly, the Court addresses Third-Party Defendant United Fire's Motion for Summary Judgment in which it seeks dismissal of all of EDT and Yor-Wic's claims asserted against it.[11] United Fire's primary contention is that there is no property damage

---

[11] On May 29, 2019, United Fire filed a Motion for Summary Judgment seeking dismissal of all claims asserted against it by EDT. <u>See</u> Record Document 85. Thereafter, United Fire filed the instant motion seeking dismissal of claims for indemnity asserted against it

alleged that would trigger coverage under the commercial general liability ("CGL") policy it issued on behalf of Yor-Wic (the "Policy"). See Record Document 98-3 at 9. The Policy at issue defines "property damage" as the following:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

Record Document 98-4 at 20. The main issue in dispute concerns the "loss of use of tangible property" language contained in subsection b.

Both federal and Louisiana state courts have addressed similar provisions on numerous occasions. In Lamar Advertising v. Continental Casualty Co., the Fifth Circuit addressed an insurance policy with nearly identical language to the one at issue in this case. 396 F.3d 654, 658 n.3 (5th Cir. 2005). There, the court noted that it "has previously rejected the notion that, under Louisiana law, the loss of possible future income or profits, or the loss of use of that income, constitutes a loss of tangible property." Id. at 662; see Selective Ins. Co. of Southeast v. J.B. Mouton & Sons, Inc., 954 F.2d 1075, 1079 (5th Cir. 1992) ("'[T]angible' property corresponds to the Louisiana civilian concept of 'corporeal' property.") (citing City of New Orleans v. Baumer Foods, Inc., 532 So. 2d 1381, 1383 (La. 1988)). Further, the reasoning affirmed in Lamar Advertising has since been followed by numerous courts within this Circuit addressing the issue. See DeLoach v. HGI Catastrophe Servs., L.L.C., 460 Fed. App'x 314, 316–17 (5th Cir. 2012); Loston v. St.

---

by Yor-Wic in which it reurged the same arguments it made in support of its previously filed motion. Therefore, the Court, for efficiency purposes, denied United Fire's first Motion for Summary Judgment, noting that it would address the motion when ruling on the other pending motions at issue. See Record Document 109 at 2.

Mary Parish Sheriff's Office, No. 16-0964, 2019 WL 1510897, at *5 (W.D. La. Apr. 5, 2019).

Here, neither EDT nor Yor-Wic allege any harm that would qualify as "property damage" under the instant Policy. Instead, they allege only a loss of use of money and delay damages relating to the untimely completion of the Project and, further, rely on the same line of cases referenced above that the Fifth Circuit has soundly rejected. See Record Document 104 at 15–16; Record Document 107 at 14. Under the reasoning set forth in Selective Insurance and Lamar Advertising, it is clear that none of the claims alleging economic loss, whether due to Project delays or otherwise, constitute an injury to or loss of tangible property within the meaning of the Policy. Thus, given that the Court is bound by the foregoing decisions, the Court finds that coverage under the Policy is unambiguously excluded and that United Fire owes no duty to defend or to indemnify Yor-Wic in this suit. See Great American Ins. Co. v. Tom's Marine & Salvage, LLC, No. 17-12090, 2018 WL 2970907, at *3 (E.D. La. June 13, 2018). Furthermore, because this finding is dispositive of the claims asserted against United Fire, the parties' additional arguments are not addressed. Accordingly, as to EDT and Yor-Wic's claims asserted against United Fire, United Fire's Motion for Summary Judgment is **GRANTED**. Therefore, all claims asserted against United Fire are hereby **DISMISSED WITH PREJUDICE**.

## III.   CONCLUSION

Based on the foregoing reasons, United Fire's Motion for Summary Judgment (Record Document 98) is **GRANTED** and all claims asserted against it are hereby **DISMISSED WITH PREJUDICE**. Further, EDT's Motion for Summary Judgment (Record

Document 97) is **GRANTED IN PART AND DENIED IN PART**. EDT's Motion is **GRANTED** as to Yor-Wic's suspensive condition claim and Fidelity's material alteration claim; thus, said claims, in addition to Yor-Wic's counteroffer claim, are hereby **DISMISSED WITH PREJUDICE**. EDT's Motion is **DENIED** as to Yor-Wic's subjective novation claim and Fidelity's defense of late notice. Additionally, Yor-Wic's Motion for Partial Summary Judgment (Record Document 100) and Fidelity's Motion for Summary Judgment (Record Document 101) are **DENIED**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 13th day of July, 2020.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT